UNITED STATES v. ACORN ROOFING CO. SAME v. BROADWAY BOWLING ACADEMY. SAME v. J. DESSNER & CO. SAME v. FEIN–BALL REALTY & CONSTRUCTION CO. SAME v. M. A. FINKEL & CO.

(District Court, E. D. New York. June 22, 1912.)

**1.** INTERNAL REVENUE (§ 25*)—CORPORATION TAX ACT—CONSTRUCTION—DUTY TO FILE RETURNS.

Corporation Tax Act Aug. 5, 1909, c. 6, § 38, 36 Stat. 112,† provides that every corporation, joint-stock company, or association organized for profit and having capital stock represented by shares, etc., shall be subject to pay annually an excise tax of 1 per cent. on its entire net income over $5,000, and that on or before the 1st day of March in each year a true and accurate return under oath or affirmation shall be made by each of the corporations, etc., subject to the tax imposed, to the collector of internal revenue, etc., and declares that for a willful neglect to make return 50 per cent. of the amount of the tax may be added, and for a false return 100 per cent. may be added, but in either case the corporation is also liable to a penalty of not less than $1,000 nor more than $10,000. *Held*, that the duty to make returns extended to all corporations of the sort described in the act, and was not limited to those the net profits of which were sufficient to render them liable to the payment of the tax.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 72, 73; Dec. Dig. § 25.*]

**2.** INTERNAL REVENUE (§ 45*)—CORPORATION TAX—ACTION FOR PENALTY—VERDICT.

Act Cong. Aug. 5, 1909, c. 6, § 38, 36 Stat. 112, imposes a tax on corporations not specifically exempted, and requires all such corporations to make a return, declaring that, if any shall refuse or neglect to make return within the time specified in each year or shall render a false or fraudulent return, it shall be liable to a penalty of not less than $1,000 nor more than $10,000. *Held* that, where a civil action is brought to recover a penalty against delinquent corporations, the jury's verdict must fix the amount of such penalty not less than the minimum, after which the only remedy of the corporations (other than appeal) is an application to the commissioner of internal revenue or the Secretary of the Treasury for a compromise authorized by Rev. St. §§ 3229, 3469 (U. S. Comp. St. 1901, pp. 2089, 2317).

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 109–113; Dec. Dig. § 45.*]

Actions by the United States against the Acorn Roofing Company, against the Broadway Bowling Academy, against J. Dessner & Co., against the Fein-Ball Realty & Construction Company, and against M. A. Finkel & Co. to recover penalties for defendants' failure to file returns under the Corporation Tax Act (Act Cong. Aug. 4, 1909, c. 6, § 38, 36 Stat. 112). A verdict having been returned in favor of the government for $1,000 in each case, defendants moved to set the same aside. Denied.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

† U. S. Comp. St. Supp. 1911, p. 946.

Wm. J. Youngs, U. S. Atty., and Louis R. Bick and William P. Allen, Asst. U. S. Attys., all of Brooklyn, N. Y.

Bloomberg & Bloomberg, of New York City, for defendant Acorn Roofing Co.

Paul Hellinger, of New York City, for defendant Broadway Bowling Academy.

Philip S. Glickman, of New York City, for defendant J. Dessner & Co.

Altkrug & Kahn, of Brooklyn (M. V. Lovins, of New York City, of counsel), for defendant Fein-Ball Realty & Construction Co.

CHATFIELD, District Judge. In the cases before the court actions have been brought against five corporations to recover in suits at law the penalty provided by Act Cong. Aug. 5, 1909, c. 6, § 38, 36 Stat. 112, for failure to file returns. By direction of the court the jury in each case has found a verdict, and has fixed the amount of penalty at the minimum, viz., $1,000.

[1] The facts shown by the record in the five cases do not differ so far as the present question is concerned. Each of the five corporations was organized under the laws of the state of New York, and either was doing or was authorized to do business during the year 1910. None of them made the return required by statute by March 1, 1911, nor did any one obtain any extension during the 30-day period, or apply to the Secretary of the Treasury to compromise their obligation for failure to comply with the statute. In each of the cases, however, the defendant has ultimately filed a report showing that the net income received by it during the calendar year 1910 did not amount to the sum of $5,000, and in one instance, at least, the evidence shows that the defendant did no business whatever beyond keeping itself in existence during that year.

The statute provides that each corporation "now or hereafter organized" shall be subject to pay, etc. This clearly makes every corporation not actually dissolved or legally out of existence subject to the provisions of law.

The next question presented is whether every organization admittedly within the classes defined, viz., a corporation, joint-stock company, or association organized for profit, and having capital stock represented by shares, and every insurance company, except the particular ones exempted, is liable to the duty of making the annual return specified by the statute, or whether only those who enjoyed a sufficient net income to make them liable to the payment of the annual tax are under obligations to make the return.

This question was first passed upon for the guidance of the Treasury Department in administering the law by an opinion of the Solicitor General, issued upon the 7th day of August, 1911, and approved by the Attorney General. In this opinion the Solicitor General refers to the income tax law of 1894, by which all persons having an income in excess of $3,500 were required to make returns, while all business corporations were expressly required to make returns whether having a net income or not. The Solicitor General also refers to the war tax law of 1898 (Act June 13, 1898, c. 448, § 27, 30

Stat. 464 [U. S. Comp. St. 1901, p. 2306]), which provided that all corporations, firms, persons, and companies engaged in the business of refining, etc., whose "gross annual receipts exceed $250,000, shall be subject to pay an annual tax." The law further on provides that each of "such corporations," etc., shall make a return of the amount of its gross receipts monthly. Under that statute the Treasury Department naturally required a monthly return from every corporation of the kinds enumerated, whether or not at the end of the year the amount of business might be such as to make the corporation liable to a tax. To hold otherwise would have been to render the law ridiculous. The present statute has not followed the language of the war tax law, however, but has provided that from the amount of the net income of each of "such corporations," etc., "ascertained as provided in the foregoing paragraphs" of the law, $5,000 shall be subtracted and that the remainder shall be taxed. It is apparent that "such corporations" in this sentence in practice must mean corporations having a net income of more than $5,000. The law then provides that on the 1st of March in each year "a true and accurate return under oath shall be made by each of the corporations," etc., *subject* to the tax imposed by this section. The Solicitor General draws an analogy between the two laws by saying that "in each case only those subject to the tax are required to make returns."

But it will be seen that the war tax law did not require a return from those only who were subject to tax, but, on the contrary, required a return from every such corporation, while in the present statute the tax is to be collected from every "such corporation" as is taxable; that is, such as have a certain amount of income, while the return is to be made by every "such corporation," subject to the tax.

In the case of U. S. v. Military Construction Co., 204 Fed. 153, decided by the United States District Court for the Western District of Missouri, and published as Treasury Decision No. 1,774, the same question as is presented in the present case was considered by the court, and the conclusions of the honorable Solicitor General were followed, for the reason that the application of the war tax law was considered to have been in the mind of the Congress when passing the present statute. But it would seem that the changes in the language of the statute might as well be held to show that Congress intended to change the application, if they were justified by the plain reading of the law. Nor does it seem that any greater confusion would result to the government if certain corporations in certain years did not make returns, and hence should be assumed to consider themselves not subject to tax, than if they did make returns, and upon the face of the figures as presented by them they did not appear to be taxable. The difference in trouble and necessary investigation to the government would be slight.

But it does appear by the reading of the law itself that the present statute makes every corporation of a certain kind subject to pay a tax upon income over and above a certain amount, and every such corporation—i. e., of the sort required to pay if their income be great enough—must make a return and must pay if taxable. There would be no difficulty about this interpretation if it were not that the Con-

gress did not specify a different penalty than is provided for a willful neglect to make return, or for a false or fraudulent return, if such be handed in. The minimum penalty for the wrongful act is $1,000, and the maximum penalty is $10,000. A willful act of this sort is also made a misdemeanor, and the law provides that the tax shall be increased by one-half, and shall bear interest if a return is not made by a certain time. It also provides that the Commissioner of Internal Revenue may prepare the return after investigation and fix the tax. The language of this section, giving authority to investigate upon report that a corporation "has failed to make return as required by law," is pertinently pointed out by the solicitor as indicating that every corporation is bound to make such return, even if not showing business enough to make it liable for the tax. If the provision for an addition of 100 per cent. for false return, or 50 per cent. for neglect, with added interest, were not based upon the amount of the tax, instead of the minimum amount of income taxable, it would be possible to treat this as the penalty for neglect, or honest belief that a return was not necessary, and the difficulties of the present situation could be avoided.

[2] But such is not the case. The law has provided but the one penalty; and in the present instances, where jury trials have been had in civil actions, the verdict must provide the amount of the penalty, and nothing less than the minimum amount, $1,000, can be found.

The present motions, therefore, which have been considered to set aside the verdict of $1,000 in each case, must be denied and the various corporations can have no remedy (other than appeal) except to apply, as is indicated in the opinion of the Solicitor General above quoted, to the commissioner of internal revenue, or to the Secretary of the Treasury, for a compromise of the government's claim under sections 3229 and 3469 of the Revised Statutes (U. S. Comp. St. 1901, pp. 2089, 2317).