CORONA COAL & COKE CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 11407.   Promulgated March 27, 1928.

*A. E. Graupner, Esq.*, for the petitioner.
*A. S. Lisenby, Esq.*, for the respondent.

**OPINION.**

TRAMMELL: The question presented is whether the assessment and collection of the deficiency. in the income and profits taxes of the petitioner is now barred by the period of limitation provided in the statute.

The return filed on March 14, 1919, on Form 1031–T was a tentative return, an estimate of the taxes due and request for an extension of time for filing return. This is not the return provided for by the statute and does not start the running of the period of limitation. *Dallas Brass & Copper Co.,* 3 B. T. A. 856; *Matteawan Manufacturing Co.,* 4 B. T. A. 953; *Boston Hide & Leather Co.,* 5 B. T. A. 617; *Pilliod Lumber Co.,* 7 B. T. A. 591.

It is contended, however, by the petitioner that the document filed on April 28, 1919, that is, Form 1120, designated corporation income and profits-tax return for the calendar year 1918, is the return required by law and starts the running of the period of limitation provided for the assessment and collection of taxes for that year. In determining whether a document is a return required by statute reference must be had to the statutory provisions with respect to returns. Section 239 of the Revenue Act of 1918 provides:

That every corporation subject to taxation under this title and every personal service corporation shall make a return, stating specifically the items of

its gross income and the deductions and credits allowed by this title. The return shall be sworn to by the president, vice president, or other principal officer and by the treasurer or assistant treasurer. * * *

It is not contended by the petitioner that it is such a corporation that was not required to make a return under section 239 of the Revenue Act of 1918 and of the same section of the Revenue Act of 1921, the two sections being the same.

Beginning with the Act of August 5, 1909, all of the Federal income-tax laws have in express terms required a return to be made by every corporation subject to the tax. Every corporation must make such a return whether it is taxable or not. *United States* v. *Acorn Roofing Co.*, 204 Fed. 157.

It is to be observed that section 239 of the revenue acts here involved makes no provision for reporting the net income of the taxpayer but provides that the return shall state specifically " all the items of its gross income and the deductions and credits allowed by this title." The document designated as the income and excess-profits-tax return for the calendar year 1918 did not disclose any of the facts which would have enabled the Commissioner to determine the tax liability of the petitioner. It did not set forth any of the facts which are required to be set forth by section 239, that is, the gross income and the deductions and credits allowed. It may be true, as the petitioner contends, that in fact it had no gross income and had no deductions or credits, but the statute requires that the return set forth this information. A return which does not purport to set forth the information required in section 239 is not the return required by law.

In the case of *Beam* v. *Hamilton*, 289 Fed. 9, the court stated as follows:

As plaintiff's income from salaries, wages, etc., under subdivision A, Form 1040, did not amount to $6,000, he was not subject to excess profits taxes thereon. The blanks under B, however, relating to income from business having invested capital were left unfilled (as was the blank in line " L " relating to deduction of excess profits taxes), and so Form 1040 failed to show any income subject to excess profits tax. In view of the considerations we have pointed out, we are unable to agree with plaintiff's contention that, because Schedule B was so left blank, and plaintiff thereby (impliedly only) made a return that he was not engaged in a business with invested capital, and that he did not owe any excess profits tax, he thereby made a return within the meaning of the excess profits title, although the return so impliedly made on Form 1040 was untrue; nor with the further contention that, unless the return actually made was willfully false or fraudulent, as the court below found it was not, plaintiff cannot be subject to the penalty for failure to make another return, as to which the liability is not conditioned upon fraudulent action. Not only was the excess profits tax a separate, distinct, and then novel source of revenue, but the statute and regulations, as we have above shown, in express and formal terms required separate and distinct returns

thereof, and we think it clear that failure to make a separate return of excess profits tax is none the less a failure to make the return contemplated by the statute because of the mere fact that the computations on the excess profits return are to be carried onto Form 1040; the use of that form also is necessary to a complete report. By section 213 the Commissioner was undoubtedly given authority, with the approval of the Secretary of the Treasury, to require both returns.

In the case of *United States* v. *Updyke*, 1 Fed. (2d) 550, the court stated as follows:

After dissolution of this corporation, its former secretary sent back to the collector of revenue the blank form provided for making the return for the tax under the law of October 3, 1917, and declared that the corporation was not in existence, and had no officers, directors, or stockholders, and that there was no money or property of the corporation in existence, and said that he was advised that the regulation, meaning the one requiring return for the tax of October 3, 1917, was erroneous. It is contended that the corporation should be deemed to have made return and to have taken sufficient affirmative action to start the statute in its favor because its returns under the 1916 act and the Act of March 3, 1917, being honestly made and filed in July and September, 1917, fairly disclosed its gains and profits for the period covered by the Act of October 3, 1917. The argument is that the corporation, having in this way honestly given the Commissioner the basis to compute the tax under the October 3, 1917, law, and then, having frankly and fully disclosed all the facts as to the dissolution and distribution of the assets, and having made clear its claim of no liability, the government's right to the tax, if any it ever had, should be deemed barred; if not in five years after August, 1917, when the returns were made and filed by the corporation, at least five years after the Commissioner was directly and fully informed of all the facts. Full information having been brought to the tax officials, it is claimed the statute started to run.

\* \* \* \* \* \* \*

The statute does expressly bar any suit to recover an income or excess profits tax begun more than five years after return was filed under the particular act which lays the tax. The phraseology of section 250 (d) which treats of " a return made under an act " and " a tax due under a return made under an act," seems cumbersome on first reading; but the purpose is not really ambiguous. These phrases are adapted from the actual working out and daily administration of the income tax laws; they are exactly descriptive and applicable to the actual situation before the Revenue Department, as known to Congress. Under each income tax law there are regulations promulgated to carry out that law, and then blank forms of return are prepared to meet the requirements of each particular law. These blank forms are submitted to the taxpayer, to be filled out and verified by him, and when he has filled out the blank, added the verification, and delivered the document to the proper officer, then the taxpayer is said to have made and filed return under the designated law. And the plain meaning of Congress in section 250 (d) is that such a making and filing of return under any one of the revenue acts will start the statute in favor of the taxpayer and against the government. There is nothing in the statute to imply that anything other than such making of return under the particular act would set the statute in motion.

This decision of the District Court was affirmed by the Circuit Court of Appeals, Eighth Circuit, 8 Fed. (2d) 913, and certiorari was denied by the United States Supreme Court, 271 U. S. 661. The document filed by the petitioner in the instant case does not conform to the statutory requirements. It does not set forth whether there was any gross income or whether there were any deductions or credits, and these are the only matters which are required by section 239. The document merely stated that there was no net income. This was merely the petitioner's conclusion, and gave the Commissioner no basis of facts or information.

The petitioner has failed to comply with the statute with respect to the matters which are specifically mentioned in the statute as being required in the return. It is stipulated in this case that neither the tentative return nor the so-called original return was or is false or fraudulent or was made for the purpose of evading tax. The exception contained in section 250 (d) of the Revenue Act of 1918 and the proviso contained in section 250 (d) of the Revenue Act of 1921 with respect to false or fraudulent returns with intent to evade the tax are not applicable here. However, the return so referred to in section 250 (d) of the 1918 and 1921 Revenue Acts should be interpreted in the light of section 239 of those Acts with respect to returns. It is the return required by section 239 which begins the running of the statute of limitations, and until a return is filed which sets forth "specifically the items of its gross income and the deductions and credits allowed" the period of the statute of limitations does not begin to run.

It appears from the stipulation that the corporation was in existence at least during a part of 1918 in that by a resolution of its board of directors dated February 7, 1918, it sold its assets and business. It then clearly was required to file a return for the calendar year 1918, and it now does not contend otherwise, but contends that it did file such a return which was sufficient to start the running of the period of limitation. In our opinion, however, since it was required to file a return, any document which does not purport to set forth gross income, deductions, or credits in accordance with section 239 of the Revenue Act of 1918 is not sufficient to start the running of the period of limitation.

Respondent is not barred from assessing and collecting the deficiency.

Reviewed by the Board.

> *Order will be entered restoring the proceeding to the calendar for assignment for hearing on the merits in due course.*