THE JOCKEY CLUB, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 63181, 68664. Promulgated May 11, 1934.

*J. Sterling Halstead, Esq.*, for the petitioner.
*James H. Yeatman, Esq.*, for the respondent.

676

SEAWELL: We will consider the errors assigned in the order enumerated. (1) The petitioner claims exemption from tax on its income for 1927 under section 231 (6) and (9) of the Revenue Act of 1926 and for the years 1928 and 1929 under the corresponding section, 103 (6) and (9), of the Revenue Act of 1928. It is a well recognized principle of law that a claim for exemption must be clearly made out and that where there is any doubt the construction must be in favor of the Government. Under other provisions of taxing statutes, similar to those before us to the extent that they exempted associations " organized and operated exclusively " for designated purposes, it has been uniformly held that all of the tests of the statute must be met by the taxpayer. It is not enough that the claimant be organized for the purposes given statutory recognition; it must be so operated and to that end exclusively. *Herbert E. Fales*, 9 B.T.A. 828; *J. Noah H. Slee*, 15 B.T.A. 710; affd., 42 Fed. (2d) 184.

" Questions of taxation must be determined by viewing what was actually done, rather than the declared purpose of the participants, and when applying the provisions of the Sixteenth Amendment and income laws enacted thereunder we must regard matters of substance and not mere form." (*Weiss* v. *Stearn*, 265 U.S. 242.)

Whether the petitioner is entitled to the exempt status claimed is largely, if not wholly, determined from the activities in which it engaged during the taxable years in issue as shown by the record. Those activities have been quite fully and in detail set forth in our findings of fact and it is not necessary to here recount them. What the petitioner did in prior years and in the taxable years in issue undoubtedly tended to improve and did improve the breed of race horses, in which its members manifested great interest.

The activities of the petitioner, in prescribing rules and regulations under which horse races were to be run; the appointment of stewards, judges, starters, and clerks of the scales; passing on the qualifications and conduct of trainers and jockeys; publishing the Stud Book and also a monthly race paper issued in the interest of horse racing and containing information on past and future races and race meets; and requiring the registration with it of the colors and assumed names used by owners of racing stables, and the many other activities described in our findings of fact and for many of which fees, commissions, or charges were required to be paid, show, in our opinion, that the predominant purpose and object of petitioner was to improve, and in large measure control, horse racing in the State of

New York. Its activities and expenditures in connection with its breeding establishment at Avon, New York, and the donations of stallions to individuals in the State of New York and elsewhere were very largely directed toward fostering and maintaining horse racing, which is generally regarded as a sport. The record fails to show that during the taxable years in issue the petitioner engaged in any research work having for its object the accumulation, coordination, or systematization of scientific knowledge pertaining to the breeding of horses or on any other subject. Nor does it appear from the record that the petitioner has in the years in issue done any experimenting or investigating concerning the breeding of horses with the object of determining principles and truths for adoption and guidance in such industry.

The record shows that the petitioner's income, including annual dues of members, was over $100,000 for each of the years in issue, with a surplus of $7,843.06 in 1927, $19,198.92 in 1928, and $12,656.04 in 1929, and the condensed balance sheets of the petitioner in evidence show it had a surplus of $203,487.78 at the end of 1929.

The fact that the petitioner is a membership as distinguished from a stock corporation does not indicate that it is not operated or can not be operated for profit. The record shows that it is to some extent operated for profit or, at least in the years in issue, that substantial profit resulted from its operation, and it is not shown that the aforesaid surplus might not be distributed in the form of a dividend and thus inure to the benefit of petitioner's members. In any event, they would be the ones that would be entitled to the surplus upon dissolution of the corporation. In the light of the record herein, we are of the opinion and hold that the petitioner does not qualify as a corporation " organized and operated exclusively " for scientific purposes and is not, as such, under section 231 (6) of the Revenue Act of 1926 and the corresponding section of the Revenue Act of 1928, entitled to the exempt status claimed. We are further of the opinion and hold that the record fails to show that the petitioner was " organized and operated exclusively for pleasure, recreation, and other nonprofitable purposes," entitling it, under section 231 (9) of said Revenue Act of 1926 and the corresponding section of the Revenue Act of 1928, to the exempt status claimed.

We are also of the opinion and hold that the petitioner is not exempt from income tax—as also insisted in its behalf—on the ground that it was " organized and operated exclusively " for purposes designated and specified in exempt classifications named in subsections (6) and (9) of sections 231 and 103 of the Revenue Acts of 1926 and 1928, respectively. We have carefully considered the

entire record and have, as indicated, reached the conclusion and hold that the respondent did not err in denying to the petitioner an exempt status. The record, we think, indicates that the petitioner's organization and activities are mainly for the promotion of horse racing and the control of the same in New York, which it has largely achieved. Its purpose and power there are recognized by the laws and courts of that State. See *Grannan* v. *Westchester Racing Assn.*, 153 N.Y. 449.

(2) The petitioner contends that the dues paid by its members should not be included in its gross income even though the petitioner is subject to tax. This Board has held, however, that dues, fines, etc., received by nonexempt clubs, benefit associations, etc., are taxable and should be included in gross income, and in the instant case it adheres to its former determinations to that effect. See *Employees' Benefit Assn. of American Steel Foundries*, 14 B.T.A. 1166; *A–1 Cleaners & Dyers Co.*, 14 B.T.A. 1314; *United Retail Grocers Assn.*, 19 B.T.A. 1016.

(3) The petitioner pleads the bar of the statute of limitations as to any tax liability for the year 1927 and makes in brief filed the same contention as to the year 1928, though as to it the statute of limitations was not pleaded and need not be considered.

For the year 1927 the petitioner filed on March 15, 1928, Form 1120, which was in blank as described in our findings of fact and contained no data whatever showing gross income, deductions, and credits. In the circumstances shown by the record, and set forth in our findings of fact, we are of the opinion and hold that the Form 1120 filed as stated did not comply with the requirements of the statute in regard to the filing of a tax return and was not such a return as started the running of the statute of limitations. *Corona Coal & Coke Co.*, 11 B.T.A. 240; *American Vineyard Co.*, 15 B.T.A. 452; *United States* v. *Updike*, 1 Fed. (2d) 550; affd., 8 Fed. (2d) 913; certiorari denied, 271 U.S. 661.

The petitioner did not file any return other than the Form 1120 heretofore described until December 9, 1929, when there was filed a return for the year 1927 which was sufficient and of such character as to start the running of the statute of limitations. The deficiency notice covering the year 1927, however, was mailed on November 21, 1932, which was within three years from the date the petitioner filed a sufficient return for 1927, and therefore the deficiency notice was timely, and we hold the tax deficiency for 1927 as determined by the respondent is not barred by any statute of limitations.

(4) The record shows that the petitioner claimed it occupied an exempt status and did not think it was required to file income tax returns, but notwithstanding such contention, with a view to avoiding any penalty if in error, it did file on March 15, 1928, and March

15, 1929, Form 1120 (in blank with the exception of the heading and signatures) for the respective years 1927 and 1928 and thereafter awaited advice from the respondent as to whether it was correct in its claim of exemption. Receiving notice from respondent about October 9, 1929, that its exempt status was denied, it, on December 9, 1929, filed tax returns for both 1927 and 1928, showing, as required by law, gross income, deductions, and credits. Under the circumstances stated, the respondent determined a deficiency in tax for each of the years 1927 and 1928, imposing a 25 percent penalty in the amount of $309 for the year 1928, but imposed none for 1927.

In our opinion, the record shows that the failure to file in due time a proper return for 1928 was not on account of willful neglect, and we are further of the opinion and hold in the light of the facts disclosed by the evidence that the failure to file a proper return for 1928 within the time prescribed by law was due to a reasonable cause and that the imposition of the 25 percent penalty for such failure is not authorized and should not be collected. See *Adelaide Park Land*, 25 B.T.A. 211, and authorities cited therein. The instant case is distinguishable from *Charles E. Pearsall & Son*, 29 B.T.A. 747, in which the failure to file tax returns for several years was due to ignorance of the law relative to the filing of tax returns. Such ignorance did not excuse nor furnish "a reasonable cause" for failure to file returns.

Reviewed by the Board.

> *Judgment will be entered for the respondent in Docket No. 68664, and under Rule 50 in Docket No. 63181.*