Thomas J. McGee Regular Democratic Club, Inc. v. Commissioner.
Thomas J. McGee Regular Democratic Club, Inc. v. Commissioner
Docket No. 108065.
United States Tax Court
1942 Tax Ct. Memo LEXIS 111; 1 T.C.M. (CCH) 18; T.C.M. (RIA) 42577; October 29, 1942
*111 William D. Sullivan, Esq., for the petitioner. Z. N. Diamond, Esq., for the respondent. DISNEY
Memorandum Findings of Fact and Opinion DISNEY, J.: This proceeding involves the following deficiencies and penalties determined by the Commissioner: Year
Income Tax
25% Penalty
1937
$ 516.88
$129.22
1938
373.93
93.48
1939
234.56
The issues are whether the petitioner is exempt from payment of income taxes; if not, whether amounts it received from membership dues were includible in income for the years in question; and whether it is liable for the 25 per cent penalties for failure to file returns. Findings of Fact The petitioner is a corporation organized under the Membership Corporation Law of the State of New York. At all times here in issue it operated a club house located at 476 - 76th Street, Brooklyn, New York. For the taxable years 1937 and 1938 it filed no income tax returns until November 10, 1939. On that date it filed corporation income and excess-profits tax return forms for each of the two preceding years with the collector for the first district of New York. On March 15, 1940, it filed with the same collector a corresponding form of return for the *112 year 1939. All three returns were filed in blank, except that the petitioner's name and mailing address were stated in the headings, and each was signed on behalf of the petitioner by William D. Sullivan, its treasurer. Accompanying each return was a copy of petitioner's certificate of incorporation and an affidavit executed by William D. Sullivan in which exemption from taxation was claimed under "Section 101, subdivision 9, of the Income Tax Law." The affidavits were all identical. They stated the particular objects for which petitioner was incorporated; asserted that the petitioner's club house was used by a high school in Brooklyn, New York, for the playing of basketball games; that it was used by various religious, civic and fraternal organizations for conducting games, parties and dances; that petitioner made no charge for such uses; and that under the Membership Corporation Law of New York the profits of the petitioner could not inure to the benefit of any member, but must be used solely for the purposes for which the petitioner was formed. No other facts in support of exemption were alleged. The petitioner was incorporated in June 1937. Its particular objects, as stated in *113 its certificate of incorporation, were: A. To foster the principles of the Democratic Party, and to aid in the selection and election of members of the party to public office. B. To take out part in the civic, fraternal and educational community movements in the Ninth Assembly District of Kings County. C. To maintain a clubhouse at 476 - 76th Street, Brooklyn, and to own and operate a restaurant and bar therein for members of our organization and their guests. The incorporators were seven individuals who also constituted the corporation's first board of directors. The by-laws provided that the original members of the corporation should be the seven incorporators and in addition all members in good standing of the Thomas J. McGee Regular Democratic Organization Ninth Assembly District, Kings County, an unincorporated association. Memberships were divided into two classes, voting and privilege. The voting class was composed of the persons designated as the original members, and such other persons as might subsequently be chosen by vote of the directors. The privilege class was to consist of all registered voters enrolled in the Democratic party and residing in the Ninth Assembly *114 District, Kings County, New York. Membership cards were issued to members of the voting class, and dues were assessed against them at the rate of $3 per year for men and $1 per year for women. The failure of a voting class member to pay dues did not result in his dismissal from membership, nor in the denial either of his right to vote or any of the privileges enjoyed by other members in good standing. Members of the privilege class were given guest cards upon verification of their enrollment as Democrats. They paid no dues and had no voting rights, but in all other respects they were entitled to the same rights and benefits as members of the voting class. During all of the years 1937, 1938 and 1939 there were approximately 3,000 members in the voting class. In 1937 and 1938 between 53,000 and 55,000, and in 1939 between 43,000 and 45,000 of the registered voters in the Ninth Assembly District, Kings County, New York, were enrolled as Democrats. In each of the three years, the Democratic enrollment comprised approximately 80 per cent of the total enrollment of voters in the district. Title to the club house property was vested in the 476 Seventy-Sixth Street Corporation, hereinafter *115 sometimes called the corporation, which had been organized for the purposes of taking title and erecting the building. Its stock was owned by Thomas J. McGee. It applied against costs of construction and equipment of the building funds which it obtained by borrowing from the petitioner and from petitioner's members, and by borrowing from outside sources upon bonds secured by mortgages on the property. Upon completion of the building, the corporation was indebted upon two mortgage bonds aggregating $17,500. In addition it owned approximately $9,000 represented by promissory notes given to materialmen and to persons who had advanced money for the work. Some of the notes had been endorsed by Thomas J. McGee. It was further indebted to the extent of approximately $4,000 to others who had furnished materials for the erection and equipment of the building. In August of 1937 an agreement was entered into by Thomas J. McGee, as first party, the petitioner, as second party, and six individuals, as third parties. In substance it provided that McGee would transfer his stock in the corporation to the six individuals; they agreed to hold it in escrow until the mortgage indebtedness and the other *116 debts of the corporation had been paid in full by the petitioner; when the debts had been entirely paid the escrow holders were to deliver the stock so held to the petitioner. In accordance with the agreement the petitioner made payments from time to time on account of the corporation's indebtedness. Funds for that purpose were obtained by borrowing from members, from dues paid by members and from profits from the operation of the club house. The payments so made by the petitioner were considered by it as creating an asset, and were so reflected in its balance sheets. Its indebtedness on account of loans from members was $6,862.50. It was all incurred prior to December 31, 1937, and no payments were made thereon during 1937, 1938 or 1939. The balance sheet reflection of that liability, therefore, remained constant throughout those years. Petitioner's treatment of the two items (payments on the indebtedness of the corporation, and liability on account of loans from members) is illustrated by its combined balance sheets for the three years: Assets
1937
1938
1939
Cash
$ 254.32
$ 66.39
$ 215.81
Advances, 476 - 76th Street Corp
10,778.68
17,351.92
20,326.02
$11,033.00
$17,418.31
$20,541.83
Liabilities
Accounts Payable
$ 1,697.94
$ 1,349.04
Members' contributions or advances
$ 6,862.50
6,862.50
6,862.50
Surplus
4,170.50
8,857.87
12,330.29
$11,033.00
$17,418.31
$20,541.83
*117 The club house contained a lounge and bar in the basement, the use of which was restricted to persons holding membership cards or guest cards, and to guests of members in good standing. There was an auditorium on the main floor measuring 40 feet by 96 feet. Petitioner made use of this room for meetings, dances, basketball games, bridge games and bingo games. Affairs of that nature were regularly held for the purpose of producing revenue. Tickets were sold to the public, and admission was in no way restricted to club members or to members of the Democratic party. Any member of the public could use, and did use, the facilities of the club, without check, in participating in bingo games. Receipts from such affairs and from the operation of its bar were petitioner's only sources of income, aside from membership dues, during the years here in question. The following table shows the receipts derived from each source: 1937
1938
1939
Dues
$ 1,764.20
$ 796.00
$ 1,123.00
Bar
2,671.60
9,358.22
13,159.85
Bingo games
3,161.39
7,344.11
5,329.53
Other receipts
2,487.00
2,650.18
4,706.94
Gross Income
$10,084.19
$20,148.51
$24,319.32
In the same years the expenses *118 of the operation of the bar and of the running of income-producing functions were as follows: 1937
1938
1939
Bar
$3,843.53
$ 7,941.03
Other functions
$1,033.17
1,976.64
3,909.50
$1,033.17
$5,820.17
$11,850.53
General expenses of the petitioner over the same period included insurance, taxes, interest, wages, and payments for utility services furnished to it. They totaled $4,841.79 in 1937, $9,565.97 in 1938, and $8,821.37 in 1939. Its net income, after allowing to it depreciation on the club house building and fixtures, was $3,323.76 in 1937, $2,991.42 in 1938, and $1,876.47 in 1939. The payments made by the petitioner in reduction of the liens against the club house property, in so far as they exceeded the amount of its borrowings from members, were made chiefly out of profits earned from the operation of the bar, and from the functions held by it for revenue-producing purposes. The petitioner regarded the 476 - 76th Street Corporation as petitioner's nominee - a title-holding straw man. It regarded the liens against the property and the corporation's indebtedness as, in substance, its own obligations. Opinion The prime question here involved is *119 whether or not the petitioner is entitled to exemption from taxation upon its income as an organization within the intendment of section 101 (9), Revenue Acts of 1936 and 1938. [1]
The Commissioner denied the exemption claimed on the ground that the corporation does not come within any of the provisions of the above section, and upon brief the respondent contends that the petitioner corporation was neither organized nor operated exclusively for nonprofitable purposes, and further that a portion of its earnings inured to the benefit of private stockholders. Inasmuch as the petitioner is claiming an exemption, the statute must be strictly construed. Northwestern Drug Co., 14 B.T.A. 222; West Side Tennis Club, 39 B.T.A. 149. Even though the purpose of organization is within the statute, if *120 the petitioner was not operated exclusively for non-profitable purposes, or if any part of its net earnings inures to the benefit of any private shareholder, the exemption is not to be allowed. The Associates, 28 B.T.A. 521; Farmers Union Co-Operative Co. v. Commissioner, 90 Fed. (2d) 488; The Jockey Club, 30 B.T.A. 670. After consideration of all the facts and the activities of the corporation here at hand, it is our opinion that it does not come within the exemption claimed. In West Side Tennis Club, supra, and quoting Jockey Club v. Helvering, 76 Fed. (2d) 597, affirming The Jockey Club, supra, we said upon this subject: * * * This does not of course mean that a club may on no occasion make a profit without losing its exemption, but it does mean that the returns from transactions with outsiders, taken by and large, shall be no more than a reimbursement of their cost to the club; shall not be a source of income. If it turns out upon computation that they are such a source over a substantial enough period to justify the *121 conclusion that this is deliberate, we agree with the Board that the club is making earnings which "inure to the benefit" of the members, though they are not distributed. * * * The corporation here clearly had income from transactions with others than its members which was "more than a reimbursement of their cost to the club." In line with its corporate by-law to maintain a clubhouse "and to own and operate a restaurant and bar therein for members of our organization and their guests," it had in the taxable years 1937, 1938 and 1939, income, respectively as follows: $10,084.19, $20,148.51, and $24,319.32, with expenses of income-producing functions for the respective years of $1,033.17, $5,820.17 and $11,850.53. Interest was paid in the sum of $416.25 in 1937, $1,152.46 in 1938, and $1,125.27 in 1939. The interest was apparently upon the obligation against the building, of which the petitioner was in effect the owner, since it had an arrangement to pay the debts against the building, and take over the stock. The petitioner had approximately 3,000 voting class members, and upon brief the petitioner agrees: * * * Presumably the members of the voting class would be entitled, upon *122 a dissolution of the petitioner corporation, to the income earned by petitioner. In West Side Tennis Club, supra, we pointed out, in denying to a tennis club the same exemption here claimed, that the earnings were used to pay the debts of the petitioner corporation just as here they were used. In this case, as therein, large sums were received from the public. For example, the operation of bingo games by the petitioner earned gross income of approximately $3,000 in 1937, $7,300 in 1938 and $5,300 in 1939. Yet, under the evidence before us the public used facilities of the clubhouse as to participation in the bingo games, without check as to whether the participants were members of the petitioner corporation or not. The public also participated in dances, receptions and basketball games, and tickets were sold to the public. The testimony was that "* * * otherwise we couldn't derive any revenue for the different affairs which we run." Again (after referring to sale to the public of tickets for political dances or receptions): "That gives the public quite a lot of latitude to be admitted to the building." In addition, the bar was used by "guests" of members. *123 A member was not limited as to the number of guests. The only reason for guest cards was to comply with the law of the State of New York restricting service to members and their guests. With that conclusion in mind, it is obvious that within the language of Jockey Club v. Helvering, supra, the returns from the transactions with outsiders were more than a "reimbursement of their cost to the club," and were a source of income. The "latitude" given to the public necessary to "derive any revenue" puts the petitioner outside the category of exempted corporations under the above authority. In addition, we note that one of the objects for which the club was organized, to wit, to maintain a clubhouse and to own and operate a restaurant and bar therein "for members of our organization and their guests," does not limit such maintenance and operation to nonprofitable activities. It is apparent that although maintained for members and guests, such a clubhous, restaurant and bar could be a means of profit, and in so far as net income was devoted to the discharge of incumbrances upon the property, it was in effect devoted to the purchase of property. This might *124 be continued for many years and such an organization might acquire much property. All of which, as the petitioner admits on brief, in case of liquidation and dissolution, would go to the "members of the voting class." We think it clear that within the thought of West Side Tennis Club, supra, and The Jockey Club, supra, petitioner was not such an organization as to be entitled to the exemption claimed. It follows that the petitioner was taxable upon the dues received from its members. The Jockey Club, supra; A-1 Cleaners & Dyers Co., Inc., 14 B.T.A. 1314; United Retail Grocers Association, 19 B.T.A. 1016. The petitioner did not file its returns for 1937 and 1938 until long after the statutory filing date, and upon November 10, 1939, the returns when filed were in blank and the affidavits attached thereto did not comply with Regulations 94, article 101-1, to the effect that a corporation claiming exemption under section 101 (9) should file its affidavit, showing the character and purpose of organization, its usual activities, source of income and disposition thereof; and that a copy *125 of the charter or articles of incorporation, by-laws and latest financial statement should be attached. Under such circumstances it can not be said that the Commissioner erred in adding 25 per cent to the tax. We discern no showing that the failure to file was due to reasonable cause. Decision will be entered for the respondent.
Footnotes
1. SEC. 101. EXEMPTIONS FROM TAX ON CORPORATIONS. The following organizations shall be exempt from taxation under this title - * * * * *
(9) Clubs organized and operated exclusively for pleasure, recreation, and other nonprofitable purposes, no part of the net earnings of which inures to the benefit of any private shareholder.↩