St. Albert's American-Polish Citizens and Social Club of the Shenango Valley v. Commissioner.
St. Albert's American-Polish Citizens & Social Club v. Commissioner
Docket No. 49583.
United States Tax Court
T.C. Memo 1955-60; 1955 Tax Ct. Memo LEXIS 277; 14 T.C.M. (CCH) 196; T.C.M. (RIA) 55060; March 15, 1955
Phillip O. North, Esq., for the respondent. MURDOCK Memorandum Findings of Fact and Opinion MURDOCK, Judge: The Commissioner determined deficiencies in income tax of $859.93 for 1946, $460.81 for 1947, and $719.87 for 1949. The only issue for decision is whether the petitioner is exempt from tax under section 101(9) as a social club. The stipulations of facts are adopted as the findings of facts. [Findings of Fact] The petitioner was incorporated under the so-called non-profit corporation law of Pennsylvania in 1935. Its purposes as set forth in its charter were as follows: "The Corporation is formed for the purpose of educating its members in the principles of our Government by means of discussions and lectures to be delivered by prominent persons versed in political governmental sciences not for *278 profit but conducive to the literary, educational and mental development and the social entertainment of its members. The corporation is not interested in fostering or furthering any political propaganda, nor is it intended that it shall aid and further the doctrines of any certain political party. The corporation is also formed for the purpose of acquiring and maintaining club rooms to be used in furthering the purposes of the association." The record does not show what, if anything, the Club did to carry out those purposes except as is hereafter indicated. The Club issued no stock but had active and social members during the taxable years. Social members enjoyed all of the privileges of active members except that they did not hold office or vote. Only members and their guests in their company were permitted to use the Club. The number of active members increased from 145 in 1946 to 193 in 1949, and the number of social members from 50 in 1946 to 109 in 1949. The annual dues for active members were $1.50 and those for social members were $1. The Club regularly maintained a system, during the taxable years, of paying sick benefits to active members who paid 50" per month therefor *279 in addition to their regular dues and had been active members for at least six months. Further requirements for receiving sick benefits were: Being current in the payment of all dues for at least thirty days preceding the sickness or disability; experiencing sickness or disability which would incapacitate him for his regular work for a period in excess of one week; and giving written notice and certification of illness to the petitioner. Sick benefits were limited to $8 per week and not more than 13 payments in any 12-month period. The number eligible for sick benefits during the taxable years increased from 18 in 1946 to 28 in 1949. The constitution and by-laws of the petitioner contained the following provisions during the taxable years: "ARTICLE VI "BENEFITS * * *
"Section 2. "In case of death of an active class member in good standing of at least one year, with dues paid up to date, the organization shall pay to his legal heirs the sum of $25.00. The sum of this benefit can only be changed subject to majority vote of members present at annual meeting." The following table shows the amounts of dues collected and sick and death benefits paid in the four-year period. *280 Dues
Benefits
Sick
Active
Social
benefit
members
members
Total
Sick
Death
1946
$102.50
$145.00
$ 50.00
$297.50
$ 40.00
$50.00
1947
123.50
122.00
54.00
299.50
360.00
1948
132.00
112.25
91.00
335.25
120.00
1949
167.50
63.00
109.00
339.50
80.00
25.00
The petitioner had only one bank account and receipts from all sources were deposited in that account and all disbursements were made from that account. The gross revenue of the petitioner for the taxable years varied from $16,673.54 in 1946 to $17,891.79 in 1949, at least $13,000 of which in each year came from the sale of liquor, beverages and food and at least $2,000 of which represented income from machines operated by the insertion of a coin. The total deductions of the petitioner for the taxable years varied from $12,578.64 in 1946 to $14,463.85 in 1949. The principal expenditures were for cost of goods sold, salaries, taxes, and "other deductions." The net income of the petitioner was $4,094.90 for 1946, $2,194.34 for 1947, and $3,427.94 for 1949. [Opinion] Section 101(9) exempts from taxation "clubs organized and operated exclusively for *281 pleasure, recreation, and other non-profitable purposes, no part of the net earnings of which inures to the benefit of any private shareholder." The taxpayer must show that it comes within those exempting provisions. Section 29.101(9)-1 of Regulations 111 states that the above provisions apply to social and recreation clubs which are supported by membership fees, dues and assessments, but if a club engages in traffic or other activities for profit it is not organized and operated exclusively for pleasure, recreation or social purposes. The sick and death benefit activities of the petitioner were not isolated transactions or an adjunct of some other important purpose of the Club. They had no particular relation to the other purposes of the Club. They could not be classified as an operation for pleasure, recreation or social purposes and therefore the petitioner was not operating exclusively for such purposes. Cf. Jockey Club, 30 B.T.A. 670, affd. 76 Fed. (2d) 597; West Side Tennis Club, 39 B.T.A. 149, affd. 111 Fed. (2d) 6, certiorari denied 311 U.S. 674; Chattanooga Automobile Club, 12 T.C. 967, affd. *282 182 Fed. (2d) 551; Keystone Automobile Club, 12 T.C. 1038, affd. 181 Fed. (2d) 402; section 101(3). Furthermore, a part of the net earnings of the petitioner, those paid out in sick and death benefits, inured to the benefit of members. Cf. Aviation Club of Utah, 7 T.C. 377, affd. 162 Fed. (2d) 984, certiorari denied 332 U.S. 837. It is immaterial that special dues were collected from those who were entitled to sick benefits since those dues are a part of the net earnings of the Club. Jockey Club, supra. That provision was apparently unsound from an actuarial standpoint. The total amount paid out in sick benefits from 1946 through 1949 exceeded the sick benefits dues collected for the same period, and for 1947 the sick benefit dues collected were $123.50 while the sick benefits paid out were $360, or almost three times the dues collected. Actually, both the sick benefits and the death benefits were paid from the general funds of the petitioner and thus came from its earnings, which earnings include all dues. The petitioner is not exempt under section 101(9). Decision will be entered for the respondent. *283