Marion H. Bell v. Commissioner. Marion H. Bell and Bettie Lou Bell v. Commissioner.
Bell v. Commissioner
Docket Nos. 60619, 60620.
United States Tax Court
T.C. Memo 1957-201; 1957 Tax Ct. Memo LEXIS 49; 16 T.C.M. (CCH) 915; T.C.M. (RIA) 57201; October 24, 1957
*49 For the taxable years 1945, 1946, 1947 and 1949, petitioner, a certified public accountant, filed "skeleton" income tax Forms 1040 which did not reflect sources of income or deductions and credits. For the years 1947, 1948 and 1949, petitioner filed delinquent income tax returns containing the required information. Held: 1. The Forms 1040 filed by petitioner for the years 1945 and 1946, and the Form 1040 first filed by petitioner for the year 1947, were not "returns" within the meaning of section 51, I.R.C., 1939, and petitioner has not shown that the failure to file timely returns for those years was due to reasonable cause and not to willful neglect. 2. No part of the deficiency determined by respondent for any of the years involved was due to fraud with intent to evade tax and petitioners are not liable for additions to tax under section 293(b), I.R.C., 1939. 3. Since no valid return was filed for the years 1945 and 1946, the assessment and collection of the deficiencies and additions to tax under section 291(a) are not barred by limitations. Section 276(a), I.R.C., 1939. 4. The notice of deficiency was not mailed within three years after the returns for the years 1947, 1948 *50 and 1949 were filed, petitioner did not file false or fraudulent returns with intent to evade tax for any of those years, and the assessment and collection of the deficiencies and additions to tax for the years 1947, 1948 and 1949 are barred by limitations. 5. Respondent's determination with respect to the deficiencies and additions to tax under section 291(a), for the years 1945 and 1946, not disturbed. John T. Williams, Esq., Boyle Building, Little Rock, Ark., and William H. Bowen, Esq., for the petitioners. John P. Higgins, Esq., for the respondent. BRUCE Memorandum Findings of Fact and Opinion BRUCE, Judge: Respondent determined deficiencies in the income tax of petitioners and additions to tax as follows: Marion H. Bell - Docket No. 60619
Addition
Addition
to Tax
to Tax
Year
Deficiency
Sec. 291(a)
Sec. 293(b)
1945
$5,232.67
$561.92
$2,616.33
1946
3,900.02
350.00
1,950.01
1947
2,366.29
638.33
1,183.14
Marion H. and Bettie Lou Bell -
Docket No. 60620
1948
$ 358.90
$ 89.72
$ 179.45
1949
1,027.82
256.95
513.91
Petitioner stipulated at the hearing that the adjustments determined by respondent with respect to the items of income for the years 1945, 1946 and 1947, as set forth in the notice of deficiency, are correct, *51 and accordingly concedes that the amounts shown as deficiencies represent his tax liability for those years. He presents certain issues with respect to limitations, additions to tax, and credit for taxes paid in connection therewith, however. The principal issues for decision are: 1. Whether certain income tax forms filed by petitioner Marion H. Bell for the years 1945 to 1947, inclusive, were returns filed within the time prescribed by law; and, if not, whether the failure to file timely returns for those years was due to reasonable cause and not due to willful neglect; 2. Whether any part of the deficiency determined by respondent for each of the years 1945 to 1949, inclusive, was due to fraud with intent to evade tax; 3. Whether the assessment and collection of the deficiencies and additions to tax for any of the years 1945 to 1949, inclusive, are barred by the statute of limitations; 4. Whether the deficiencies determined by respondent for the years 1945 and 1946 should be reduced by the amount of tax payments previously made by petitioner for those years; and, if so, whether the additions to tax for those years should be based on the net deficiencies after such reductions. The *52 following additional issues are presented in the event the assessment and collection of the deficiencies and additions to tax for the years 1948 and 1949 are not barred by the statute of limitations: 5. Whether certain amounts paid by petitioner Marion H. Bell's mother toward the purchase of a house represented rental income to petitioners in 1948 and 1949; 6. Whether petitioner Marion H. Bell's sister and nephew were dependents of petitioner during the years 1948 and 1949; 7. Whether petitioner Marion H. Bell's distributive share of the profits of an accounting partnership in 1949 should be increased by $3,471.05 as a result of the disallowance of a deduction for accrued salary of $4,750; 8. Whether petitioner Marion H. Bell sustained a loss in 1949 from worthless stock of the Progress Cutlery Company; 9. Whether additions to tax for failure to file timely returns were properly determined against petitioners for the years 1948 and 1949; 10. Whether credit should be allowed for an amount paid by petitioners toward an addition to tax for failure to file a timely return for 1948. Findings of Fact Marion H. Bell (hereinafter referred to as petitioner) and Bettie Lou Bell are husband and *53 wife and reside in Forth Smith, Arkansas. They filed the income tax returns or purported returns (Forms 1040) for the taxable years involved with the collector of internal revenue for the district of Arkansas. Bettie Lou Bell has no separate income of her own and is joined herein only because she signed joint returns with petitioner for the years 1948 and 1949. During the taxable years petitioner was a certified public accountant practicing in Fort Smith, Arkansas. Petitioner began his career in 1928 as a junior accountant in the office of R. C. Frambers and Company in Fort Smith. In November of 1931 he successfully completed his CPA examination and was promoted to a senior accountant in the company. During World War II petitioner's accounting work became increasingly heavy because of an increase in income tax return business and because of the extra work resulting rorm the passage of excess profits tax statutes and the Current Tax Payment Act of 1943. Also, petitioner was enjoying a considerable growth in his own clientele. Although pressed for time in the war years, petitioner's growing accounting business was hampered by restrictions on applications for extensions of time for filing *54 returns. As a result of these restrictions, petitioner went to the Little Rock, Arkansas office of the collector of internal revenue to determine what accountants could do to relieve the pressure of last minute filing responsibilities. After a general discussion with an assistant collector, who told him he should use his own judgment, petitioner concluded that the use of individual returns reflecting the taxpayer's estimate of tax liability would serve the purpose of timely filing. Petitioner filed such a return for 1944 which reflected his estimate of his tax liability and later filed an amended return complete as to all items of income and deductions. On March 15, 1946, petitioner filed a Form 1040 for 1945 which showed his name and address, the names of his exemptions, total receipts of $14,000, tax due of $2,985, prepayment credits of $2,500, a balance of tax due of $485, and his signature. The form did not disclose any details indicating sources of income and deductions nor did it reflect the tax computation. On April 11, 1946, petitioner filed a supplemental page 3 to Form 1040 for 1945 which reflected total deductions of $2,000 and the tax computation for that year. No other *55 Form 1040 was subsequently filed by petitioner for 1945. Petitioner paid the $2,985 tax liability reflected on the form. The books and records of R. C. Frambers and Company consisted of a cash book journal, kept by R. C. Frambers, and an accounts receivable ledger, kept by petitioner. Expenses of the partnership were recapitulated by Frambers twice a year and entered in the journal. Petitioner ran the totals of the income and expense items of the partnership from which totals Frambers prepared the partnership return. A partnership return of income prepared by R. C. Frambers for the year 1945 and filed March 15, 1946 showed that petitioner's distributable share of the partnership income was $16,367.10. Petitioner's income from the partnership was received in the form of a drawing account in the amount of $200 per month plus four distributions by check, all of which amounts were deposited by petitioner in his bank account. In 1945 petitioner did special work for the Ward Furniture Manufacturing Company involving a claim for excess profits tax relief and the preparation of excess profits tax returns. For this work Ward Furniture Manufacturing Company was billed for a total of $4,500. *56 Petitioner and Frambers agreed to split this fee rather than enter it on the books of the partnership as partnership income. On November 27, 1945, petitioner received a check from Frambers for $2,316.14, which represented petitioner's one-half interest in this fee. Included in his check was reimbursement of $66.14 for expenses incurred in connection with this work. Petitioner did not report this fee as income in 1945. Three years later, however, petitioner filed an affidavit with the Internal Revenue Service in which he stated that Frambers had failed to report a share of a similar fee in 1944 and that Frambers probably did not report the fee received in 1945. In the affidavit petitioner also complained of certain other actions by Frambers with respect to the filing of income tax returns. Petitioner offered no explanation of his failure to report his own share of the fee. Petitioner's correct net income for 1945 is as follows: Income: R. C. Frambers & Co., C.P.A.
Partnership
$16,367.10
Accounting fee - Ward Furniture
Manufacturing Co.
2,250.00
Interest on savings accounts
3.12
Gain on sale of personal residence
50% taxable
1,050.28
$19,670.50
Deductions: Interest
$378.99
Taxes
323.59
Contributions
889.05
Miscellaneous expense
69.11
Auto expense
524.41
2,185.15
Net Income
$17,485.35
Respondent *57 determined the deficiency in income tax and additions to tax for 1945 as follows: Income tax liability
$5,232.67
Income tax liability disclosed by re-
turn
0.00
Deficiency of income tax
$5,232.67
Additions to Tax: Section 291(a), Internal Revenue
Code of 1939 (25% of $5,232.67
minus $2,985.00, amount of tax
paid)
561.92
Section 293(b), Internal Revenue
Code of 1939 (50% of $5,232.67)
2,616.33 In 1946 petitioner's work load became increasingly burdensome. At the insistence of a doctor, petitioner left town and spent the month of August in California with his family. Upon his return to his office petitioner was faced with the additional task of training a new junior accountant. Petitioner received no assistance from other members of the firm. The firm was burdened with R. C. Frambers' son, whose incompetence forced petitioner and other members of the firm to correct his work in addition to their usual duties. On March 15, 1947, petitioner filed a Form 1040 for 1946. No details showing exemptions, sources and amounts of income, or deductions are disclosed on the form and the form does not contain a computation of the tax liability. The form shows petitioner's name and address, his signature, a tax *58 liability of $2,500, $2,000 in prepayments, and balance of tax due of $500. Petitioner had paid $2,000 in quarterly installments accompanying declarations of estimated tax for 1946. Petitioner paid $500 with the form filed on March 15, 1947. No other Form 1040 was subsequently filed by petitioner for 1946. The books and records of R. C. Frambers and Company were maintained during 1946 in the same manner that they were maintained in 1945. Petitioner's income from the partnership in 1946 was received in the same manner, by means of a drawing account $200of per month and periodic distributions by check, all of which were deposited by petitioner in his bank account during 1946. A partnership return of income of R. C. Frambers and Company for the year 1946 showing petitioner's distributable share of partnership income as $18,309.80 was signed and sworn to by Frambers on March 12, 1947, and filed with the collector of internal revenue on March 17, 1947. Petitioner's correct net income for 1946 is as follows: Income: R. C. Frambers & Co., C.P.A.
partnership
$18,309.80
Interest on savings accounts
10.00
Total
$18,319.80
Less: Auto expense not reim-
bursed
350.39
Adjusted gross income
$17,969.41
Deductions: Interest
$ 20.18
Taxes
252.16
Contributions
804.70
Miscellaneous expense
140.35
Medical expense
$1,510.30
Less: 5% of
$17,969.41
898.47
611.83
1,829.22
Net Income
$16,140.19
Respondent *59 determined the deficiency in income tax and additions to tax for 1946 as follows: Income tax liability
$3,900.02
Income tax liability disclosed by re-
turn
0.00
Deficiency of income tax
$3,900.02
Additions to tax: Section 291(a), Internal Revenue
Code of 1939 (25% of $3,900.00
minus $2,500.00, amount of tax
paid)
$ 350.00
Section 293(b), Internal Revenue
Code of 1939 (50% of $3,900.02)
1,950.01
From 1935 to 1947 petitioner had steadily increased the percentage of income produced by him for the partnership. By 1945, petitioner was producing approximately half of the total income received by R. C. Frambers and Company. Petitioner's share of the partnership profits for the years 1945, 1946, and 1947 was 33 1/3 per cent. In addition to his other duties in the partnership, petitioner prepared the following number of tax returns and audits in 1946 and 1947: Detailed
Period
Tax Returns
Audits
January 1, 1946 -
85 Individual
March 15, 1946
28 Partnership
15
25 Corporate
January 1, 1947 -
135 Individual
March 15, 1947
30 Partnership
24
33 Corporate Petitioner undertook this heavy work load and high percentage of income production because it had been his understanding that upon R. C. Frambers' retirement, petitioner and *60 another senior accountant would be given control of the business. In January of 1947 R. C. Frambers made a concerted effort to end petitioner's connection with the accounting partnership. Frambers wrote to several clients whose accounting work had been personally handled by petitioner, advising them that petitioner would soon be removed from the firm but that Frambers and Company would like to continue handling their business. In addition to letters of solicitation, Frambers made telephone calls and conferred with clients in an attempt to ingratiate himself with them before removing petitioner from the partnership. Frambers did not inform petitioner of his actions with respect to clients. In March of 1947 petitioner learned of Frambers' activities from a friend and client. Petitioner also received by registered mail a letter of solicitation written by Frambers to a client of the firm. When confronted with this information, Frambers initially denied that petitioner was a member of the partnership. Subsequently, Frambers conceded that petitioner was a partner and stated that he was planning to dissolve the partnership. By agreement dated April 4, 1947, petitioner and Frambers entered *61 into a compromise plan whereby petitioner's association with the partnership was ended. Petitioner received a one-third interest in the accounts receivable owing to the firm at the time of termination of the partnership, his undistributed share of the net earnings of the partnership up to and including March 31, 1947, and his interest in the office furniture and fixtures. Annexed to the agreement were two lists of clients. The first list contained the names of clients previously served by petitioner whose business affairs he would continue to serve. The second list recited the names of clients who had previously been served by petitioner but who were not to continue to be his clients unless petitioner secured from them in writing a request for his services. In April of 1947, petitioner formed his own accounting business. Several members of R. C. Frambers and Company left that partnership and joined petitioner in the new business. Thereafter, Frambers continued to solicit petitioner's clients in an attempt to recover some of the business taken over by petitioner. On March 15, 1948, petitioner filed a Form 1040 for 1947 which showed his name and address, a tax liability of $1,000, and *62 prepayment credits of $1,000. The $1,000 was paid in installments accompanying declarations of estimated tax for 1947. The Form 1040 contained no details showing source and amount of income, exemptions, or deductions, and no computation of tax liability. On December 20, 1948, petitioner filed a return for 1947 which was marked "amended". The return shows net profit of $3,356.51 from business as an accountant for the period April 1, 1947 to December 31, 1947, the amount of $5,320.14 as income from R. C. Frambers and Company partnership, $400 salary from Progress Cutlery Company, and interest in the amount of $6.23, for a total adjusted gross income of $9,082.88. Deductions were itemized and tax liability of $1,187.05 was computed on the return. Petitioner paid the difference between the tax due on the return and the $1,000 previously paid for 1947. Until the dissolution of the R. C. Frambers and Company partnership on March 31, 1947, the books and records of the partnership were kept in the same manner as in prior years and petitioner received his income from the partnership in the same manner. At the time of dissolution of the partnership, petitioner and Frambers computed petitioner's *63 distributable share in the earnings of the partnership up to and including March 31, 1947. The accounts receivable earned by but not yet paid to the partnership were determined and the dissolution agreement provided that petitioner was to receive one-third of the accounts receivable. Out of good and collectible accounts in the total amount of $19,770.43, petitioner received $6,123.03 in accounts receivable. The agreement further provided that doubtful accounts were split between petitioner and Frambers and that the parties were to collect as much of these accounts as they could. Petitioner was to receive one-third of doubtful accounts collected. The return filed by petitioner in December 1948 for the year 1947 did not include the following items of income: Additional income, R. C. Frambers &
Co., C.P.A. partnership
$ 200.00
Collections on accounting fees due
R. C. Frambers & Co., which ac-
counts were assigned to Bell in the
dissolution of that firm
6,123.03
Receipts from R. C. Frambers on
doubtful accounts receivable col-
lected
727.84
Retained portion of collections of
doubtful accounts receivable
13.33
Fee for services to the Estate of M. T.
Bell
75.00
Unreported interest on savings ac-
counts and U.S. Treasury Bonds
46.73
Reimbursement from the Mutual Bene-
fit Health & Accident Association
for medical expenses paid in 1946
(expenses allowed in computing 1946
income)
30.50
$7,216.43
*64 Petitioner's father, Marion T. Bell, died in 1944, leaving $4,158.06 in cash available for distribution to his three children. The three children of Marion T. Bell - petitioner, H. O. Bell, and Evelyn B. Dickey - agreed to use this inheritance to purchase a home for their mother, Emily H. Bell, who was divorced from Marion T. Bell, in which she could live and teach music. In January of 1946, petitioner, Evelyn B. Dickey, and Howard O. Bell purchased a house located at 809 Belle Avenue, Fort Smith, Arkansas, for this purpose. The purchase price of the property was $7,350. Since funds from the estate were not yet available, a cash down payment of $1,500 was advanced by petitioner from his personal funds but he was repaid as funds from his father's estate became available. The remainder of the purchase price was financed by a loan of $6,000. Title to the house was taken in the names of petitioner and Emily H. Bell. On August 3, 1947, the house was occupied by Emily H. Bell for use as a music studio and living quarters. Emily H. Bell paid a monthly charge based on the following: Monthly Payment on House Loan
$50.64
Monthly Payment on FHA Loan
38.33
Taxes (estimated)
5.00
Insurance (estimated)
4.03
$98.00
*65 Emily H. Bell paid $98 per month for the use of the house throughout the years 1948 and 1949. The monthly payment was deposited in a bank account which reflected the financial transactions concerning the house. This bank account was opened with the funds received from the estate of Marion T. Bell and was carried in the name of petitioner and Emily H. Bell from January 16, 1946 to October 13, 1947. Petitioner's name was on the account solely because he was handling the transactions for his mother. Petitioner drew on the account to pay off the principal and interest on the loan, insurance premiums on the house, and taxes on the property. Emily H. Bell did not draw any checks on the account. From October 14, 1947 to May 4, 1951, the account was carried in the name of petitioner and H. O. Bell, so that if petitioner were unable to manage the account for Emily H. Bell his brother could do so. On September 1, 1947, the market value of the house was determined, the amount of the net equity in the house was calculated, and an agreement was made to pay Evelyn B. Dickey an amount equal to a one-third interest in the net equity. On November 1, 1947, the net equity in the house was $3,623.05, *66 divided as follows: Petitioner
$1,207.68
H. O. Bell
1,207.69
Evelyn B. Dickey
1,207.68 For her interest, Evelyn B. Dickey was paid $842 during 1948 and $314 during 1949, with a balance due on March 18, 1949, of $51.69. Payments were made from the bank account carried in the names of petitioner and H. O. Bell. On March 15, 1949, Emily H. Bell filed an income tax return prepared by petitioner for 1948 in which she reported gross income from her business as a music teacher in the amount of $3,291.35. Among the business deductions claimed on the return is rent in the amount of $876. On March 17, 1950, Emily H. Bell filed an income tax return prepared by petitioner for 1949 in which she reported gross income of $3,671.10 from music teaching and claimed a deduction of $1,176 for house rent. On December 5, 1952, petitioner and his wife executed a quitclaim deed transferring their rights in the house to Emily H. Bell. On July 16, 1953, Emily H. Bell filed amended income tax returns prepared by petitioner for 1948 and 1949 on which the property was listed as a fixed asset of Emily H. Bell and depreciation for those years was claimed on the dwelling. On those returns no deductions for rent were *67 taken. Petitioner's sister, Evelyn B. Dickey, was divorced in 1946, as a result of which she received $500 cash, alimony of $100 a month for seven months, and Government bonds worth $1,600. Petitioner managed her financial affairs and set up a joint account in the name of Marion H. Bell and Evelyn B. Dickey. Petitioner deposited the money received by Evelyn Dickey after her divorce and wrote checks on the account for her living expenses. After Marion T. Bell's death, Evelyn Dickey had agreed with petitioner and H. O. Bell to turn her share of the estate over to the joint account managed by petitioner for the benefit of Emily H. Bell, which was used to finance the purchase of the house located at 809 Belle Avenue. Accordingly, checks from the estate made payable to petitioner, Evelyn Dickey, and H. O. Bell to the total amount of $4,158.06 were deposited in the account as a gift to Emily H. Bell. Evelyn Dickey and her son lived in the house from April 3, 1946 to August 3, 1947, and paid $40 a month into the Emily H. Bell account during that period. Evelyn Dickey had been emotionally upset as a result of her divorce and was not trained in any type of work, and her son, Richard, was an *68 unemployed minor. By the end of 1947 the funds remaining in her joint account with petitioner had shrunk to $8.92. In order to assist Evelyn Dickey and Richard, petitioner, in January of 1948, borrowed $643.48 from Emily H. Bell's joint account and deposited it in Evelyn Dickey's joint account. Petitioner also furnished $34.65 from his personal account for the support of Evelyn and Richard Dickey during 1948. Petitioner's total contribution to the support of Evelyn and Richard Dickey during 1948 was $678.13. Evelyn Dickey spent a total of $1,188.29 from her own funds for the support of herself and her son during 1948. During 1949 petitioner furnished $418.08 of his own funds for the support of Evelyn and Richard Dickey. Evelyn and Richard Dickey spent a total of $626.29 from their own funds for their support in 1949. At the end of the year 1948, petitioner borrowed $600 from the Superior Federal Savings and Loan Association and deposited this amount with Emily H. Bell's joint account as a credit against the loan he had made to himself for the support of Evelyn and Richard Dickey. During the year 1949, petitioner deposited additional amounts in Emily H. Bell's joint account as repayment *69 of loans from that account. On October 1, 1948, petitioner and M. F. Magruder formed an accounting partnership under the name of Bell and Magruder. The senior staff member of the partnership was A. Dunlap Booth, who had formerly been employed with R. C. Frambers and Company. The income from the partnership was divided among the two partners and Booth on the basis of the fee production of each individual less that individual's proportionate share of the total expenses. Because he was not a C.P.A., the firm could not, under Arkansas law, hold Booth out as a partner, even though he was entitled to a percentage of the profits. On December 15, 1949, the partnership of Bell and Magruder filed a partnership return of income for the fiscal year ended September 30, 1949. The return was filed on the cash basis and showed a deduction for salaries in the amount of $17,723.05. Included in this amount was an item of $7,000 which represented Booth's "salary" for that fiscal year. Booth's salary account on the books of the partnership showed a credit of $4,750 on September 30, 1949. This amount represented Booth's proportionate share of the partnership profits for the fiscal year ended September *70 30, 1949, and it was included in the $7,000 "salary" attributed to Booth on the partnership tax return. The $4,750 was paid on the following dates and in the following amounts: September 30, 1949
$ 386.20
December 24, 1949
500.00
December 29, 1950
1,863.80
September 30, 1951
1,500.00
June 23, 1952
500.00
$4,750.00 The amount of $386.20 represented withholding tax and social security payments deducted from the account. In December of 1950, a revenue agent investigating petitioner's income tax returns informed petitioner that the partnership's method of deducting Booth's compensation was incorrect and that in the future payments to Booth should be deducted on the cash basis. Subsequently, the partnership deducted the $4,750 in the fiscal years in which payments were made. Prior to 1949, petitioner had acquired $10,000 worth of stock in the Progress Cutlery Company of Fort Smith, Arkansas. Petitioner was treasurer of the corporation and did the company audit work. In the year ended May 31, 1949, the company sustained a loss of approximately $20,000. The company plant closed down on July 1, 1949, and never reopened. A revenue agent's report with respect to this stock states that "this stock became *71 completely worthless either in 1949 or 1950. Local investigation revealed that at least a part of the stockholders, for Federal income tax purposes, considered the stock as not becoming worthless until 1950." On September 15, 1950, petitioner and his wife filed an income tax return for 1948. No previous returned had been filed for that year. On the return, petitioners claimed exemptions for themselves, their children, petitioner's sister, Evelyn B. Dickey, and petitioner's nephew, Richard Dickey. The return reflected receipts of $27,362.50 from petitioner's business as an accountant, business deductions of $10,574.83, adjusted gross income of $16,692.84, prepayment credits of $750, tax liability of $2,237.56, and a tax computation showing a total tax due including interest in the amount of $1,621.44. Petitioners paid the tax due and subsequently paid an addition to tax for delinquent filing in the amount of $371.89 plus accrued interest of $84.60. Respondent determined that petitioners omitted from their return for 1948 interest income of $20.37 and rental income of $206.72 from the house occupied by petitioner's mother. Respondent disallowed the claimed exemptions for petitioner's *72 sister and nephew on the ground that petitioner had not furnished the major part of their support during the year. On March 17, 1950, petitioner and his wife filed a Form 1040 for the year 1949. The form shows the names and addresses of petitioners, exemptions for themselves and three children, signatures of both taxpayers, total receipts of $7,000, and a computation showing tax due of $314.40. The form does not reflect any details showing sources of income or itemized expenses or deductions. On September 15, 1950, petitioner and his wife filed a return for 1949 labeled "amended". This return details petitioner's income from his accounting business and expenses are itemized. It shows income of $10,610.87, tax liability of $937.14, prepayment credits of $250, and tax due including interest of $389.92. On this return additional exemptions for Evelyn B. Dickey and Richard Dickey were claimed. On March 16, 1953, petitioner and his wife filed a second "amended" return for 1949. This return contains the same information as that revealed in the return filed on September 15, 1950, except that the second return claimed a capital loss of $1,000 for worthless stock of Progress Cutlery Company. *73 For the year 1949, petitioner and his wife made payments totaling $250 with declarations of estimated tax, a payment of $314.40 with the Form 1040 filed on March 17, 1950, and a payment of $383.92 with the return filed on September 15, 1950. Respondent determined that in 1949 petitioner and his wife omitted from their tax returns income of $20.51 and rent from the house occupied by petitioner's mother in the amount of $198.98. By determining that the $4,750 credited to A. D. Booth's salary account at the end of the fiscal year ended September 30, 1949, was not deductible from partnership income until the amount had been paid, respondent increased petitioner's partnership income by $3,471.05. Respondent also disallowed exemptions for Evelyn B. Dickey and Richard Dickey on the ground that petitioner had not furnished the major part of their support during the year, and disallowed the claimed capital loss on the ground that petitioner had not established the worthlessness of the stock in 1949. In 1951 petitioner's wife, who had been in bad health since 1945, was confined to her bed with a varicose vein condition. Since this condition was aggravated by the requirements of her four children *74 she was directed by her doctor to undergo treatment at the Mayo Clinic. Upon her return from the Clinic in the spring of 1951, she was confined to her bed for a long period. In September 1952, petitioner was indicted by a Federal grand jury under section 145(b), Title 26, of the U.S. Code, on four counts of income tax evasion for the years 1946 to 1949, inclusive. Petitioner entered a plea of not guilty to each count and began preparation for trial. However, because of his wife's ill health and the probable harmful effect that a public trial would have on his children, petitioner changed his original plea. On December 8, 1952, petitioner pleaded nolo contendere to two counts of income tax evasion for 1946 and 1947. The two counts involving 1948 and 1949 were dismissed on motion of the United States Attorney. Petitioner was convicted upon his plea. He was fined $5,000 on the first count, but on the second count imposition of sentence was suspended and he was placed on probation for three years. After petitioner was convicted, a complaint was filed against him by the Director of Practice of the United States Treasury Department designed to bar the renewal of petitioner's Treasury card. *75 After a hearing, the Secretary of the Treasury determined that the date for renewal of the card would run from October 6, 1955. Since that date, petitioner has been permitted to practice before the Treasury Department. In May 1953 the Arkansas State Board of Accountancy heard a complaint designed to revoke petitioner's certificate to practice as a public accountant. The Board determined that petitioner's certificate be suspended for a period of time to run concurrently with the period of probation ordered by the Federal District Court upon petitioner's conviction for tax evasion. The three years probation period was terminated by court order on December 8, 1953. Consequently, on January 5, 1954, the Arkansas State Board of Accountancy reinstated petitioner as a Certified Public Accountant in good standing as of December 8, 1953. Petitioner had a good reputation in Fort Smith, Arkansas, and the parts of Arkansas and Oklahoma in which he does business. He cooperated fully with respondent's agents during their examination of his books and records. He made his records available, furnished the agents with a list of banks in which he had accounts and made no attempt to conceal or cover *76 up any of his records. The notices of deficiency were mailed on October 13, 1955. Petitioner failed to file income tax returns within the time prescribed by law for each of the taxable years 1945, 1946, and 1947. Such failure was not due to reasonable cause. No part of the deficiency for each of the taxable years 1945, 1946, and 1947 was due to fraud with intent to evade tax. No returns were filed for the years 1945 and 1946. The returns filed for the taxable years 1947, 1948, and 1949 were not false or fraudulent with intent to evade tax. Opinion Respondent has determined deficiencies and additions to tax, for failure to file timely returns and for fraud, against petitioner, a certified public accountant. Petitioner concedes the correctness of the deficiencies determined for the years 1945, 1946, and 1947, but contests the deficiencies determined by respondent with respect to the years 1948 and 1949. Petitioner further contends that he filed timely income tax returns for each of the taxable years and denies that any part of the deficiency determined for each of the taxable years was due to fraud with intent to evade tax, or that the returns filed were false or fraudulent with intent *77 to evade tax. Limitations is pleaded with respect to each of the taxable years involved. The years 1945 to 1947, inclusive, will be discussed separately from the years 1948 and 1949. The Years 1945 to 1947, Inclusive The first issue is whether certain income tax forms filed by petitioner for each of the years 1945 to 1947, inclusive, were returns filed within the time prescribed by law, and if not, whether the failure to file timely returns for those years was due to reasonable cause and not due to willful neglect. On March 15, 1946, petitioner filed a Form 1040 for 1945 which showed gross receipts of $14,000, tax due of $2,985, prepayment credits of $2,500 and balance of tax due of $485. The form contained no information as to source of income, nature and amount of expenses or deductions and no computation of tax. In April of 1946, petitioner filed a supplemental page 3 to Form 1040 for 1945 which reflected total deductions of $2,000 and the tax computation for that year. However, no return was ever filed by petitioner for 1945 which showed source of income and a detailed breakdown of deductions. Petitioner's correct net income for the year 1945 was $17,485.35, and his correct tax *78 liability for that year is $5,232.67. Petitioner followed a similar procedure with respect to the filing of his income tax return for 1946. On March 15, 1947, petitioner filed a Form 1040 for 1946 which showed tax liability of $2,500, prepayments of $2,000 and a balance of tax due of $500. The form contained no information with respect to amount and source of income, deductions or tax computation, and no return containing this information was ever filed by petitioner for 1946. Petitioner's correct net income for 1946 was $16,140.19 and petitioner's correct tax liability for that year is $3,900.02. On March 15, 1948, petitioner filed a Form 1040 for 1947 which showed a tax liability of $1,000 and prepayment of estimated tax of $1,000. The form contained no details pertaining to amount and source of income, deductions or tax computation. On December 20, 1948, petitioner filed a Form 1040 for 1947 marked "amended" which reflected a total adjusted gross income of $9,082.88 from four sources. Deductions were itemized and tax liability of $1,187.05 was computed on this form. Petitioner's correct net income for 1947 was $15,291, and his correct tax liability is $3,553.34. It is the settled *79 view of this Court that Forms 1040 filed within the allotted time do not qualify as "returns" within the meaning of section 51 of the Internal Revenue Code of 1939 where they do not state specifically the items of gross income and the deductions and credits allowed. Leo Sanders, 21 T.C. 1012, affd. (C.A. 10, 1955) 225 Fed. (2d) 629, certiorari denied 350 U.S. 967; Harrington Co., 6 T.C. 720; National Contracting Co. v. Commissioner (C.A. 8), 105 Fed. (2d) 488, affirming 37 B.T.A. 689. Here, on the last day for filing returns for the years 1945, 1946, and 1947, petitioner filed Forms 1040 which did not show in detail the items of income he received during the year, the deductions claimed, or any expenses incurred. Although the forms contained amounts alleged to be the tax liability for the year, none of the forms contained any computation of tax. Moreover, for the years 1945 and 1946 no complete returns reflecting these details were ever filed by petitioner. For the year 1947 petitioner did file a complete return containing the required information but this return was not filed until December 20, 1948, nine months or more after the last day for filing 1947 returns. Consequently, *80 the additions to tax determined by respondent for delinquent filing must stand unless petitioner has shown that his failure to make and file returns within the time prescribed by law was due to reasonable cause and not due to willful neglect. A major portion of the record is devoted to petitioner's explanation of how he endeavored under the press of business demands and personal problems to devise a system for the timely filing of his personal income tax returns. Petitioner points to the difficulty of obtaining extensions of time during the war years, the constant demands of his growing clientele and his personal conflict with the senior partner in the accounting firm to support his contention that he filed skeleton forms to comply with the statute and that he intended to file complete, amended returns at a later date. In our view, however, these considerations do not establish that petitioner's failure to file timely returns for the years 1945 to 1947, inclusive, was due to reasonable cause. Petitioner is a certified public accountant who has practiced accounting since 1931. He has had considerable experience in handling tax matters and has filed numerous income tax returns for clients. *81 With these qualifications, he undoubtedly was well aware of the requirements for filing timely income tax returns. Petitioner's knowledge of the importance of filing timely returns was brought out by his testimony that during the war years extensions of time were increasingly difficult to get and that he made a special trip to the Little Rock, Arkansas, office of the collector of internal revenue to ask advice with respect to this problem. Petitioner was never informed by any member of that office that systematic filing of skeleton returns to be followed by amended ones would meet statutory requirements. Petitioner merely concluded that such a procedure would be acceptable even though he knew that the requirement of timely filing was being strictly enforced. Nor does petitioner's personal conflict with R. C. Frambers constitute reasonable cause for his failure to file timely returns for 1945, 1946, and 1947. The antagonism between the two appears to have been the result of many factors. It does not, however, appear to have arisen out of anything having to do with the filing of petitioner's individual income tax returns. There is evidence that prior to 1946, Frambers had been accustomed *82 to furnishing petitioner and his other associates a statement showing their distributable share of the partnership income at or about the time the returns for the partnership were prepared. There is a conflict, however, between the testimony of petitioner and Frambers which we find it unnecessary to resolve, as to whether such statements were furnished for the years 1945 and 1946. There is no evidence that petitioner demanded or was refused such information by Frambers. Moreover, petitioner's share of the partnership income was paid to him each year in the form of a $200 monthly drawing account plus periodic distributions, all of which were received by petitioner during the taxable year and deposited in his personal banking account. Also, petitioner himself kept some of the partnership records pertaining to its income and made some of the tabulations from which Frambers prepared the partnership returns. Information as to other items of his income was also readily accessible to petitioner and there is indication petitioner could have prepared and filed his individual returns with a minimum of time and effort. We do not ignore the fact that petitioner was heavily burdened with work during *83 the years immediately preceding the break-up of the partnership, and also that Frambers' attempts to eliminate petitioner from the partnership and at the same time to retain petitioner's personal clients were particularly harassing and disconcerting. Nevertheless, the discomfiture caused by Frambers' activities is not a sufficient excuse for petitioner's failure to file appropriate returns for the years 1945 and 1946. Moreover, the return for 1947 was not due until March 15, 1948, almost a year after the partnership between petitioner and Frambers was dissolved. Considering all the circumstances we cannot say that Frambers' harassment or the pressing demands of his accounting business, separately or together, constituted sufficient justification for petitioner's failure to file timely and appropriate returns. Accordingly, we hold that petitioner has failed to establish that his failure to file timely income tax returns for the years 1945 to 1947, inclusive, was due to reasonable cause and not to willful neglect. The next question to be determined with respect to the years 1945, 1946, and 1947 is that of fraud as to which the burden of proof is upon the respondent. Section 1112, Internal Revenue Code of 1939. *84 Two sections of the statute are involved: sections 293(b)[1] and 276(a) [2] of the Internal Revenue Code of 1939. We first consider the question under section 293(b), whether any part of the deficiency for each of the years involved was due to fraud with intent to evade tax. A charge of fraud is never to be taken lightly and is never to be presumed. While it is not necessary that it be proven beyond a reasonable doubt, as in criminal cases, neither is the ordinary preponderance of evidence sufficient to establish such a charge. Where, as in the instant *85 case, fraud is not admitted, the burden is upon respondent to prove fraud by clear and convincing evidence. Henry S. Kerbaugh, 29 B.T.A. 1014, affd. 74 Fed. (2d) 749; Arlette Coat Co., 14 T.C. 751; W. A. Shaw, 27 T.C. 561, (on appeal C.A. 6). An essential element to the establishment of fraud under section 293(b) is that of "intent to evade tax," described in E. S. Iley, 19 T.C. 631, 635, as "the intent to defraud the government by calculated tax evasion," and in Mitchell v. Commissioner, 118 Fed. (2d) 308, 310, reversing 40 B.T.A. 424, as "the specific purpose to evade a tax believed to be owing." Cf. Wiseley v. Commissioner, 185 Fed. (2d) 263, reversing 13 T.C. 253; William W. Kellett, 5 T.C. 608. The question of intention is a factual one to be resolved from a consideration of the entire record. M. Rea Gano, 19 B.T.A. 518; E. S. Iley, supra.It is well established that "negligence, whether slight or great, is not equivalent to the fraud with intent to evade tax named in the statute." Mitchell v. Commissioner, supra.Also, the fact that the respondent determined a greater tax liability than reported and his determination is sustained does not of itself establish *86 fraud. Estate of Louis L. Briden, 11 T.C. 1095, 1133, affd. sub nom. Kirk v. Commissioner, 179 Fed. (2d) 619; Harold B. Franklin, 34 B.T.A. 927, 938; James B. Nicholson, 32 B.T.A. 977, affd. 90 Fed. (2d) 978. The consistent and substantial understatement of income over a period of years may, however, constitute clear and convincing evidence of fraud. Holland v. United States, 348 U.S. 121; Epstein v. United States (C.A. 6, July 2, 1957), 246 Fed. (2d) 563; Schwarzkopf v. Commissioner (C.A. 3, July 10, 1957), 246 Fed. (2d) 731, affirming on this point a Memorandum Opinion of this Court [15 TCM 762), T.C. Memo. 1956-155]. We have found as a fact that no part of the deficiencies for the years 1945, 1946, and 1947 was due to fraud with intent to evade tax. We arrived at this conclusion only after careful consideration of all the facts and circumstances presented by the record herein, including petitioner's conviction upon a plea of nolo contendere for income tax evasion for the years 1946 and 1947. See Lillian Kilpatrick, 22 T.C. 446, affd. 227 Fed. (2d) 240; Paul Masters v. Commissioner, 243 Fed. (2d) 335, affirming 25 T.C. 1093. At the time petitioner filed skeleton *87 returns for the years 1945, 1946, and 1947, we are not convinced that he had any intention to "evade" tax but rather to "avoid" having to pay a penalty for failure to file timely returns. His failure thereafter to file amended or complete returns for 1945 and 1946 was likewise, in our opinion, not due to intent to evade tax but to negligence induced in large part by the difficulties he was having with his business associate and his family problems. Cf. Wiseley v. Commissioner, supra; Canton v. United States, 226 Fed. (2d) 313. Such negligence, though inexcusable, is nevertheless not the equivalent of the fraud with intent to evade tax required by the statute. Mitchell v. Commissioner, supra. In the "amended" return filed for the year 1947, petitioner failed to include $7,216.43 of taxable income. The greater portion of this represented income received by petitioner from collections on accounts receivable assigned to him upon the dissolution of the Frambers partnership. These receipts are reflected in petitioner's records and were included in the work papers which he used to prepare the "amended" 1947 return. His failure to transcribe such figures to Schedule E of the 1947 return *88 is ascribed by him to error or oversight. His failure to report this income is not of itself sufficient to constitute fraud, and in the absence of other evidence indicating fraud, we are of the opinion that such omission of income in 1947 was also due to negligence and not to intent to evade tax. Considering all the facts and circumstances and having carefully weighed the testimony of each of the witnesses, we hold that respondent has not established by clear and convincing evidence that a part of the deficiencies for the years 1945, 1946, and 1947 was due to fraud with intent to evade tax, and accordingly that petitioner is not liable for any addition to tax under the provisions of section 293(b), for the years 1945, 1946, and 1947. It necessarily follows from what we have said above that the return filed by petitioner for the year 1947 was not false or fraudulent with intent to evade tax within the meaning of section 276(a). Accordingly, petitioner's claim that the assessment and collection of the deficiencies and the additions to tax for the year 1947 is barred by limitations must be sustained. We have found that no returns were filed for the years 1945 and 1946, however, and under *89 section 276(a) the assessment and collection of the deficiencies and such additions to tax as are required by section 291(a) for these years is not barred by limitations. We next consider petitioner's contention that the deficiencies determined by respondent for the years 1945 and 1946 should be reduced by the tax payments made by petitioner on his declarations of estimated tax and with the Forms 1040 filed by him for those years, and that the additions to tax, if any, for the years 1945 and 1946 should be computed on the basis of the net deficiencies after such reduction. The record reveals that petitioner made payments totalling $2,500 on his declaration of estimated tax for 1945 and that he made a payment of $485 with the Form 1040 which he filed for that year. It also appears that he made payments totalling $2,000 on his declaration of estimated tax for 1946 and a payment of $500 with the Form 1040 which he filed for that year. In computing the deficiencies herein, respondent gave no credit for these payments and determined that the deficiencies for 1945 and 1946 amounted to the entire tax liability of petitioners for those years. In support of his position that the "statutory *90 deficiency" is the entire amount of the tax liability of the petitioner for each of the years involved, respondent cites section 271(a) of the Internal Revenue Code of 1939 and Regulations 111, section 29.271-1 (as amended by T.D. 5447, March 21, 1945) defining "deficiencies". See also section 271(b). On brief, however, respondent concedes that these payments were made by petitioners in 1945 and 1946 and states that the payments will be credited against the deficiencies in the recomputation under Rule 50. Since petitioners will be given the relief sought in the recomputation under Rule 50, further discussion of this question is deemed unnecessary. With respect to the basis for the computation of additions to tax, in view of our holding that no part of the deficiencies for 1945 and 1946 was due to fraud with intent to evade tax, no computation of additions to tax under section 293(b) is necessary. As to the additions to tax for failure to file timely returns under section 291(a), it is noted that for each of the years 1945 and 1946 respondent computed the additions to tax on the basis of the entire tax liability reduced by the amounts of tax paid by petitioners. It thus appears that *91 petitioner has received the relief here sought, and, since the respondent is not claiming additions to tax under section 291(a) in any larger amount, we leave the parties as we find them. The Years 1948 and 1949 Several items are presented with respect to the taxable years 1948 and 1949. However, if the notice of deficiency was not mailed within three years after the returns for those years were filed, the assessment and collection of the deficiencies and additions to tax for 1948 and 1949 are barred by the statute of limitations and discussion of the remaining issues is unnecessary, unless the running of the statute is suspended because the returns were false and fraudulent with intent to evade tax. On September 15, 1950, petitioner and his wife filed a joint income tax return for 1948 which contained the information required by section 51(a) of the Internal Revenue Code of 1939. For 1948, the period of limitations prescribed in section 275(a) of the Code began to run from September 15, 1950. Helvering v. Campbell, 139 Fed. (2d) 865, affirming a Memorandum Opinion of this Court [1 TCM 47]; Paul Haberland, 25 B.T.A. 1370. With respect to the year 1949, it appears that on March *92 17, 1950, petitioner and his wife filed a Form 1040 for 1949 which did not reflect any details showing sources of income or itemized expenses or deductions. The form reflected only names and addresses, exemptions, total receipts, tax due, and signature. We recognize that perfect accuracy or completeness is not necessary to rescue a return from nullity, if it purports to be a return, is sworn to as such and evinces an honest and genuine endeavor to satisfy the law. Zellerbach Paper Co. v. Helvering, 293 U.S. 172. But this form does not meet the requirements of section 51(a) that it shall set forth "the items of gross income and the deductions and credits allowed" and as such it was not an honest and genuine effort to satisfy the law. Since the form was not a return within the meaning of the statute, the filing of the form did not set the statute of limitations in operation. National Contracting Co., supra; Corona Coal & Coke Co., 11 B.T.A. 240. However, on September 15, 1950, petitioner and his wife filed a second Form 1040 for 1949. This form contains the information required by section 51(a) and it qualifies as a return under the statute. It therefore follows that the period *93 of limitations for the taxable year 1949 also began to run from September 15, 1950. The filing of an amended return for 1949 by petitioner and his wife on March 15, 1953, does not affect this result. The running of the statute of limitations cannot in any way be affected or suspended by the later filing of amended returns. Belle R. Weaver, 4 B.T.A. 15; Estelle B. Sargent, 22 B.T.A. 1270; Anna M. B. Foster, 45 B.T.A. 126, affd. 131 Fed. (2d) 405; Ira Goldring, 20 T.C. 79. Since the notices of deficiency were not mailed until October 13, 1955, the assessment and collection of the deficiencies and additions to tax for 1948 and 1949 are barred unless respondent has proved by clear and convincing evidence that the returns filed for those years were false and fraudulent with intent to evade tax. After examining all of the evidence relating to the years 1948 and 1949, we have concluded that respondent has failed to carry this burden. Although the returns filed by petitioner and his wife for 1948 and 1949 were delinquent, they were substantially correct and reflected the sources and amounts of petitioner's income. The only items of unreported income uncovered by respondent were small *94 amounts of interest income from savings accounts and alleged rents based on one-half of amounts paid by petitioner's mother toward the purchase of a house. The other adjustments made by respondent were disallowance of exemptions for petitioner's sister and nephew, an increase in petitioner's share of partnership income for 1949 based on the disallowance of a deduction for accrued salary of A. D. Booth, and disallowance of a capital loss from worthless stock in 1949. Without discussing at length the merits of respondent's determination, it is sufficient to note that petitioner offered evidence explaining all of the items in dispute, except the omission of interest income. Some inconsistencies in the evidence exist, but on the whole it appears that petitioner's explanation as to the computation of his income tax for the years 1948 and 1949 was not unbelievable. During those years, petitioner was managing for his widowed mother a joint account through which payments on the house which she occupied were made. At the same time, he was managing another joint bank account for his divorced sister and her son while furnishing some of his own funds for their support. His method of accounting *95 for the funds entrusted to him may not have been the most accurate, but we find nothing in his actions to indicate that the failure to report "rent" from his mother and the claimed exemptions for his sister and nephew constituted a deliberate fraud. Nor does the method of reporting the salary of A. D. Booth indicate intentional fraud, and respondent's agent conceded that petitioner's stock in Progress Cutlery Company became worthless in either 1949 or 1950. We further note that petitioner cooperated at all times with the examining agent during the investigation, made his books and records available, and made no attempt to conceal any of his business transactions for the years 1948 and 1949. His testimony was not evasive and his demeanor was sincere. Petitioner's answers to questions concerning his tax returns were responsive, and the existence of some contradictions in his statements may be explained by petitioner's many personal problems, such as the constant harassment he suffered from his former partner, the sickness of his wife, and the pressure of building up his own accounting practice. When all of the above factors are considered together, we are satisfied that the returns filed *96 for the years 1948 and 1949 were not false or fraudulent with intent to evade tax. We therefore hold that the statute of limitations bars the assessment and collection of the deficiencies and additions to tax determined by respondent for those years. Decisions will be entered under Rule 50. Footnotes
1. SEC. 293. ADDITIONS TO THE TAX IN CASE OF DEFICIENCY. * * *
(b) Fraud. - If any part of any deficiency is due to fraud with intent to evade tax, then 50 per centum of the total amount of the deficiency (in addition to such deficiency) shall be so assessed, collected, and paid, in lieu of the 50 per centum addition to the tax provided in section 3612(d)(2)↩. 2. SEC. 276. SAME - EXCEPTIONS. (a) False Return or No Return. - In the case of a false or fraudulent return with intent to evade tax or of a failure to file a return the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time.↩